

# IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ARMADILLO DISTRIBUTION
ENTERPRISES INC.**, a Florida Corporation
and **CONCORDIA INVESTMENT
PARTNERS, INC.**, a Florida Corporation,

      Plaintiff,

vs.

**WASHBURN INTERNATIONAL INC.**, An
Illinois Corporation,

      Defendant.

CASE NO.: 8:02-CV-1703-T-27map

---

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF AND
## DEMAND FOR JURY TRIAL

Plaintiff **Armadillo Distribution Enterprises, Inc**., a Florida Corporation
("**Armadillo**") and **Concordia Investment Partners, Inc.**, a Florida Corporation ("**Concordia**")
hereby sue Defendant **Washburn International, Inc**. ("**Washburn**"), an Illinois Corporation
and alleges as follows:

### PARTIES AND JURISDICTION

1.    Plaintiff Armadillo is a corporation organized and existing under the laws of, and
is a citizen of, the state of Florida, with its principal place of business at 15251 Roosevelt
Boulevard, Clearwater, Florida.  Armadillo is in the business of manufacturing and selling
musical equipment.

2.    Plaintiff Concordia is a corporation organized and existing under the laws of, and
is a citizen of, the state of Florida, with its principal place of business at 15251 Roosevelt

Boulevard, Clearwater, Florida.   Armadillo is in the business of manufacturing and selling musical equipment.

3.      Armadillo and Concordia (collectively, the "Plaintiffs") are informed and believe that Defendant Washburn is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 444 East Courtland Street, Mundelein, Illinois.

4.      This Court has jurisdiction:

(a)      The Counts into which this subparagraph is incorporated arise under 15 U.S.C. §1121, 28 U.S.C. §§ 1331 and 1338.

(b)      In the Counts into which this subparagraph is incorporated, pursuant to 28 U.S.C. §1332, because Plaintiff and Defendant are citizens of different states and/or countries and the amount or value in controversy exceeds $75,000, exclusive of interest and costs; or

5.      Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391.

<u>**GENERAL ALLEGATIONS**</u>

**The Legendary Dean Guitar**

6.      On or about the year 1977, Dean Zelinsky designed an electric guitar with a unique guitar body shape and headstock (the "Dean Trade Dress"), and branded it with the name **DEAN** (the "Name") and a distinctive winged design (the "Winged Design") (collectively, the Dean Marks).

7.      Guitars bearing the Dean Marks ("Dean Branded Guitars") are the stuff of Rock and Roll legends and have been used by classic guitarists throughout the world.

8.     Dean Branded Guitars have been used by classic guitarists from groups such as the Cars, Van Halen and ZZ Top.

9.     Dean Branded Guitars have also been used by guitarists from groups such as Pantera, including a performer known as Dimebag Darrell.

10.    Photographs of the performer known as Dimebag Darrell have appeared in publications, quoting him as saying, "It's like a weapon.  Hell, I can play any guitar I want.  I chose Dean.  Tell 'em to pick one up.  Dean Guitars can speak for themselves."

11.    Since 1977 the Dean Trade Dress, the Name and the Winged Design have been used in association with guitars so that they are well known throughout the United States and the world as the source of origin for guitars.

12.    Armadillo is exclusive licensee to the successor in interest of the Dean Marks and the goodwill associated therewith.

13.    Over the years, Concordia and its predecessors in interest have spent a considerable amount of money establishing themselves and the Dean Marks in the minds of customers as a source of Dean-Branded Guitars.  Concordia goods, and those of its predecessors in interest, have borne the Dean Marks and their goods have been sold throughout the United States and the world under that mark.

14.    Concordia owns and holds a registered trademark for the mark **DEAN** and a winged design for use in connection with guitars (the "Registered Dean Marks").   The Registered Dean Marks have been registered upon the Principal Register of the United States Patent and Trademark Office as registration number 2,609,816 since its registration date of August 20, 2002.  Concordia has given notice of its registered rights in its mark by using the ®

symbol in connection with its marks.  Concordia causes Registered Dean Marks to be placed on guitars, advertising and packaging.  A depiction of the mark registered in the '816 registration taken from the website of the United States Patent and Trademark Office is attached hereto as Exhibit A.

### Defendant's Dean Knock-Off

15.    On information and belief, on or about 1994, the musician known as Dimebag Darrell, or persons working in connection with or for him, designed a derivative of the Dean Branded Guitar (Defendant's "Dean Knockoff"), with the same overall guitar body design and headstock bearing a design similar to the Winged Design surrounding the word "Dime," instead of "Dean," in substantially the same configuration as found in the Dean guitars.

16.    The Defendant, as manufacturer of Defendant's Dean Knockoff, took a license from a predecessor in interest to Plaintiff's, attached hereto as Exhibit B (the "License Agreement").

17.    Under the License Agreement, Defendant undertook the following obligations:

> [Defendant acknowledges] exclusive right, title and interest in and to the Trademarks and will at no time do or cause to be done any act or thing contesting or in any way impairing or tending to impair any part of such right, title and interest. . . . Upon termination of this AGREEMENT in any manner provided herein, [Defendant] shall have one year ("Sell-Off Period") from such date to sell any remaining Washburn Dime Model Guitars.  After the Sell-Off Period, [Defendant] shall cease and desist from all use of the Trademarks in any way.

18.    The License Agreement terminated by its own terms on October 1, 2000.

19.    On information and belief, since October 1, 2000, Defendant has continued to manufacture its Dean Knockoff, rather than merely selling "remaining" inventory, and continues to make use of its confusingly similar variation of the Dean Marks.

20.    On information and belief, since October 1, 2001, Defendant has continued to manufacture its Dean Knockoff and similar guitars, and continues to make use of its confusingly similar variation of the Dean Marks.

21.    Defendant has threatened Armadillo through belligerent correspondence and telephone calls to breach its License Agreement obligation not only by failing to refrain from further use of the Dime Marks in the manufacture its Dean Knock-Off, but claiming affirmative rights as against Armadillo regarding Armadillo's continued use of the Dime Marks.

22.    Defendant has acknowledged through its lawyers in correspondence that the manufacture and sale of the Dean Branded Guitars and the manufacture and sale of the Dean Knock-Off has given rise to a likelihood of confusion as to the source or origin of guitars.

### Defendant's Fraudulent Prosecution of Trademark Applications

23.    On information and belief, notwithstanding its actual knowledge of prior use and priority of the Dean Marks and their contractual obligations with respect thereto, Defendants fraudulently prosecuted at least two trademark applications they knew to be meritless, one of which has matured to registration as a result of Defendant's omissions and misrepresentations to the United States Patent and Trademark Office.

24.    On or about August 30, 2001, Defendant filed application Serial Number 78/081920, seeking a United States Trademark registration of the configuration of a headstock of

a guitar for use with stringed musical instruments, and claiming a date of first use in August of 1994.

25.     On or about August 30, 2001, Defendant filed an application seeking United States Trademark registration of the configuration of a guitar body for use with guitars, which application matured to United States Trademark Registration No. 2,588,629 (the "'629 Registration"), and claiming a date of first use in August of 1994.

26.     On information and belief, Defendant knew that the body shape and head stock depicted in said applications (the "Fraudulent Applications") is confusingly similar to the Dean Branded Guitars.

27.     On information and belief, Defendant knew that the Dean Branded Guitars were first used in commerce in or about 1977.

28.     On information and belief, Defendant knew that the Dean Branded Guitars were first used in commerce prior to August of 1994.

29.     In the Fraudulent Applications, Defendant attested that Defendant is the sole and exclusive owner of the claimed product configurations.

30.     In the Fraudulent Applications, Defendant attested that Defendant's use of the claimed product had attained secondary meaning in the relevant marketplace.

31.     The attestations set forth in the preceding two paragraphs are false and are material to the registerability of the product configurations claimed in the Fraudulent Applications.

32.     In prosecuting the Fraudulent Applications, Defendant failed to disclose to the United States Patent and Trademark Office the product configuration of the Dean Branded Guitars or any date on which the Dean Branded Guitars were first used in commerce.

33.     The configuration and first date of use of the Dean Branded Guitars are material to the registerability by Defendant of the product configurations claimed in the Fraudulent Applications.

34.     Defendant has threatened to assert rights under at least one of the Fraudulent Applications against the Plaintiff.

**COUNT 1**
***(Infringement of Federally Registered Trademark)***

35.     The activities of Defendant described herein infringe the federally registered trademarks of Plaintiff Concordia in violation of the Federal Trademark Act, 15 U.S.C. § 1051, et. seq.

36.     Plaintiff Concordia re-alleges and incorporates herein the allegations of paragraphs 1 through 4(a), inclusive, and paragraphs 5 through 33 of this complaint.

37.     Plaintiff Concordia is informed and believes that:

(a)     Defendant has intentionally used and is continuing to use the Registered Dean Marks in commerce in connection with the interstate sale of guitars bearing confusingly similar variations of the Registered Dean Marks;

(b)     Defendant knew and knows that it is presently without authority to use the Registered Dean Marks in connection with guitars, and continues to do so;

(c)    Defendant has and is presently using a confusingly similar variation of the Registered Dean Marks in connection with the sale, offering for sale or distribution of guitars;

(d)    Defendant is threatening to continue using the Registered Dean Marks as set forth herein; and

(e)    Such use of the Registered Dean Marks has caused and is likely to cause confusion, mistake or deceit among the consumers of such goods.

38.    The acts of Defendant since October 1, 2000 have been without license, permission or consent with respect to the manufacture of new guitars.

39.    The acts of Defendant since October 1, 2001 have all been without license, permission or consent.

40.    Plaintiffs have been damaged by the acts of Defendant.

41.    These acts here caused and, unless restrained by the Court, will continue to cause serious and irreparable harm to Plaintiffs and to the goodwill associated with the Registered Dean Marks, for which Plaintiffs will have no adequate remedy at law.

WHEREFORE, Plaintiff Concordia respectfully request that the Court enter judgment in its favor and against Defendant, jointly and severally, as follows:

A.    Preliminarily and permanently enjoining them, and their agents, owners, employees, servants, attorneys and others acting under their direction and control from engaging in the infringing activities alleged herein;

B.    Requiring them to account for and pay over to Plaintiff Concordia all gains, profits, and advances derived by them from the activities complained of.

C.      Awarding Plaintiff Concordia an amount equal to all actual damages suffered thereby.

D.      Awarding Plaintiff Concordia, respectively, three times the amount of actual damages.

E.      Assessing prejudgment interest on all damages awarded;

F.      Assessing against them Plaintiff Concordia's costs and attorneys fees pursuant to applicable statute; and

G.      Granting such further relief as the Court deems just and equitable under the circumstances.

## COUNT 2
### *(False Designation of Origin and Misrepresentation Under §43(a) of The Lanham Act)*

42.     Defendant's conduct as alleged herein constitutes false designation of origin, misrepresentation and unfair competition in violation of Section 43(a) of The Lanham Act, 15 U.S.C. §1125(a).  This Court has jurisdiction under 15 U.S.C. §1121, 15 U.S.C. §1125(a) and 28 U.S.C. §1338(a).  This Court also has jurisdiction of the action under 28 U.S.C. §1332, as there is diversity of citizenship between the parties, and the amount in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.  Venue is proper in this District under 28 U.S.C. §1391.

43.     Plaintiffs re-allege and incorporate herein against Defendant the allegations of paragraphs 1 through 3(a) and 5 through 33, and 36 through 40, inclusive, of this complaint.

44.     Defendant wrongful use of the Dean Marks constitutes a false designation of origin and misrepresentation that is likely to deceive and has deceived customers and prospective

customers into believing that Armadillo's products are those of or are duly authorized by Plaintiff, and as a consequence, are likely to divert and have diverted customers or business away from Plaintiff.

45.      Defendant has, by the above-described actions, wrongfully usurped the control over the quality of the goods and services transferred, distributed or sold by Plaintiffs, by introducing or selling in the United States products bearing Plaintiff's Marks without the approval of Plaintiffs.  Because of the confusion as to the source encouraged by the Defendant, Plaintiffs are informed and believe that the valuable goodwill in respect to their respective trademarks is at the mercy of the Defendant.  Plaintiffs are further informed and believe that any failure, neglect or default by such Defendant in providing such products and services will reflect adversely on the respective Plaintiff as the believed source of origin thereof, hampering efforts by Plaintiffs to continue to protect their outstanding reputation for high quality products and services, resulting in loss of sales thereof and the considerable expenditures to promote its products and services under their respective marks, all to the irreparable harm of Plaintiffs.

46.      Plaintiffs are informed and believe that Defendant is improperly profiting from the above-described wrongful activities.

47.      Plaintiffs are informed and believe that Defendant's false designation of origin and misrepresentation will continue unless enjoined by this Court.

48.      Plaintiffs are informed and believe that Defendant's above-described acts have caused them damages in excess of $75,000 apiece, and threaten irreparable injury to Plaintiffs.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in its favor and against Defendant, as follows:

A.     Preliminarily and permanently enjoining them, and their agents, owners, employees, servants, attorneys and others acting under their direction and control from engaging in the infringing activities alleged herein;

B.     Requiring them to account for and pay over to Plaintiffs all gains, profits, and advances derived by them from the activities complained of;

C.     Awarding Plaintiffs an amount equal to all actual damages suffered thereby;

D.     Awarding Plaintiffs, respectively, three times the amount of actual damages;

E.     Assessing prejudgment interest on all damages awarded;

F.     Assessing against them Plaintiffs' costs and attorneys fees pursuant to applicable statute; and

G.     Granting such further relief as the Court deems just and equitable under the circumstances.

## COUNT 3
### *(Unfair Competition)*

49.    This Count arises under the Florida common law of unfair competition. Jurisdiction is pursuant to 28 U.S.C. §1332 and also is pendant to Counts 1 and 2 pursuant to 28 U.S.C. §1338(b).  Venue is proper in this District under 28 U.S.C. §1391.

50.    ·Plaintiffs hereby re-allege and incorporate herein against Defendant the allegations of paragraphs 1 through 3(b), 5 through 33, 36 through 40, and 43 through 47, inclusive, of this complaint.

51.    By committing the acts herein alleged, Defendant has been guilty of unfair competition, deceptive advertising and unfair trade practices, in violation of the Florida common law of unfair competition causing the Plaintiffs damages and loss of profits.  Plaintiffs are

informed and believe that Defendant's unlawful conduct will continue to damage Plaintiffs unless enjoined by this Court, and Plaintiffs have no adequate remedy at law with regard to such conduct in the future.

52.     Plaintiffs are informed and believe that Defendant's above-described acts have caused them damages in excess of $75,000 apiece, and threaten irreparable injury to Plaintiffs.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in its favor and against Defendant, as follows:

A.      Preliminarily and permanently enjoining them, and their agents, owners, employees, servants, attorneys and others acting under their direction and control from engaging in the infringing activities alleged herein;

B.      Requiring them to account for and pay over to Plaintiffs all gains, profits, and advances derived by them from the activities complained of;

C.      Awarding Plaintiffs an amount equal to all actual damages suffered thereby;

D.      Assessing punitive damages in an amount to be determined by the Court, but which amount should not be less than three times the actual damages assessed;

E.      Assessing prejudgment interest on all damages awarded; and

F.      Granting such further relief as the Court deems just and equitable under the circumstances.

**COUNT 4**
*(Violation of the Florida Deceptive and Unfair Trade Practices Act)*

53.     This is an action for unfair methods of competition and unfair and deceptive acts and practices in the conduct of Defendant's trade in violation of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Sections 501.201 et seq.

54.     Plaintiffs re-allege and incorporate herein against Defendant the allegations of paragraphs 1 through 3(b), 5 – 33, 36 through 40, 43 through 47, and 50 through 51, inclusive of this Complaint.

55.     Pendent jurisdiction of this Court for Count 4 is therefore present pursuant to 28 U.S.C. §1338(b).  Venue is proper in this District under 28 U.S. C. §1391.

56.     Plaintiffs hereby re-allege and incorporate herein against Defendant the allegations of paragraphs 1 through 42, inclusive, of this complaint.

57.     By committing the acts herein alleged, Defendant has been engaged in unfair methods of competition and unfair and deceptive acts and practices in the conduct of its trade within the State of Florida in violation of Florida Statutes, Section 501.204 et seq., causing Plaintiffs' injury.  Defendant's unlawful conduct has caused Plaintiff to suffer actual damages that they believe exceed $200,000 apiece.  Defendant's unlawful conduct will continue to damage Plaintiffs unless enjoined by this Court, and Plaintiffs have no adequate remedy at law.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A.     Preliminarily and permanently enjoining Defendant, and their agents, employees, servants, attorneys and others acting under their direction and control from engaging in the infringing activities alleged herein;

B.     Awarding actual damages in an amount to be determined by the Court;

C.     Assessing against them Plaintiffs' costs and attorneys fees pursuant to applicable statute; and

D.     Granting such further relief as the Court deems just and equitable under the circumstances.

### COUNT 5
### *(Cancellation of Federally Registered Trademark)*

58.     This is an action for cancellation of a federally registered trademark pursuant to 15 U.S.C. §§ 1064 and 1119.

59.     Plaintiffs hereby re-allege and incorporate herein against Defendant the allegations of paragraphs 1 through 3(a), 5 through 33, 36 through 40, 43 through 47, 50 through 51, and 54 through 56, inclusive, of this complaint.

60.     As between Plaintiffs and Defendant, Plaintiffs are the senior users of the Dean Marks.

61.     Defendant knows that as between Plaintiffs and Defendant, Plaintiffs are the senior users of the Dean Marks.

62.     Defendant obtained registration of United States Trademark Registration Nos. 2,588,629 fraudulently and contrary to the provisions of 15 U.S.C. § 1052 and other governing law and regulations.

63.     Defendant is seeking registration maturing from United States Trademark Application Serial No. 78/081920 fraudulently and contrary to the provisions of 15 U.S.C. § 1052 and other governing law and regulations.

64.     Plaintiffs have been and are likely to be damaged by Defendant's continued registration of United States Trademark and Service Mark Registration No. 2,588,629 and by the issuing of a registration from United States Trademark Application Serial No. 78/081920 in that Plaintiffs, since 1977 have been the senior users of the Dean Marks.  Defendant's registration and potential registration threatens to deprive Plaintiffs of the use of this valuable business asset by virtue of Defendant's registration is clear evidence of such damage.

WHEREFORE, Plaintiffs respectfully requests that the Court enter judgment in their favor and against Defendant, as follows:

A.  Canceling United States Trademark Registration No. 2,588,629, and directing the United States Department of Commerce, Patent and Trademark Office, to strike said registration from the Principal Register;

B.  Directing the United States Patent and Trademark Office to refuse registration of United States Trademark Application Serial No. 78/081920;

C.  Assessing against Defendant the Plaintiffs' costs and attorneys fees pursuant to applicable statute, including the costs of investigation and preparation of the present Complaint; and

D.  Granting such further relief as the Court deems just and equitable under the circumstances.

### COUNT 6
### *(Declaratory Relief)*

65.     This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 that Plaintiffs have not violated any federal or state trademark law as asserted by Defendant.

66.    The allegations set forth in paragraphs 1 through 3(a), 5 through 33, 36 through 40, 43 through 47, 50 through 51, 54 through 56, and 59 through 63, inclusive, of this complaint.

67.    The assertions of Defendant against Plaintiffs, asserting that Plaintiffs are infringing exclusive rights of Defendant create a substantial controversy between Plaintiffs and Defendant, and the parties have adverse legal interests.

68.    Plaintiffs are interested parties within the meaning of 28 U.S.C. § 2201 and has standing to requests such declaratory relief under the Federal Declaratory Judgment Act.

69.    By virtue of their assertions of exclusive rights as against Plaintiffs, the Defendant has initiated and are pursuing a course of conduct that will result in imminent and inevitable litigation unless these issues are resolved by an appropriate declaration.

70.    Specifically, Plaintiffs are entitled to a judgment stating that they have not infringed, and by continuing to sell Dean Branded Guitars will not infringe, on any trademark or other intellectual property right of Defendant.

71.    All conditions precedent to the relief request have been performed, have occurred or have been waived.

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and against Defendant, as follows:

A. Declaring that Plaintiffs have infringed no intellectual property right of Defendant;

B. Declaring that Defendant is infringing the Dean Marks;

C.   Canceling United States Trademark Registration No. 2,588,629, and directing the United States Department of Commerce, Patent and Trademark Office, to strike said registration from the Principal Register;

D.   Directing the United States Patent and Trademark Office to refuse registration of United States Trademark Application Serial No. 78/081920;

E.   Assessing against Defendant the Plaintiffs' costs and attorneys fees pursuant to applicable statute, including the costs of investigation and preparation of the present Complaint; and

F.   Granting such further relief as the Court deems just and equitable under the circumstances.

### COUNT 7
### *(Breach of Contract)*

72.      This is an action for breach of contract arising under the common law.

73.      The allegations set forth in paragraphs 1 through 3(a), 5 through 33, 36 through 40, 43 through 47, 50 through 51, 54 through 56, 59 through 63, and 66 through 70, inclusive, of this complaint.

74.      Pursuant to the terms of the License Agreement, Defendants are obliged to cease and desist from further sale of Washburn Dime Model Guitars.

75.     Pursuant to the terms of the License Agreement, Defendants are obliged to cease and desist from using the Dean Marks in any way.

76.     The enforceability of these provisions survived the termination of the Agreement

77.     Plaintiff Concordia is assignee of and beneficiary of the obligations owed by Defendant under the License Agreement.

78.     Defendant has breached the License Agreement by continuing to sell Washburn Dime Model Guitars and continuing to use the Dean Marks.

79.     Defendant has breached the License Agreement by asserting exclusive rights as against Plaintiff with respect to Plaintiff's use of the Dean Marks.

80.     Defendant has refused to cease and desist from its breaching conduct.

81.     Plaintiff Concordia has suffered damages as a direct and proximate result of such conduct and is entitled to compensation therefore.

82.     All conditions precedent to the relief requested have been performed, have occurred or have been waived.

WHEREFORE, Plaintiff Concordia respectfully requests that the Court enter judgment in its favor and against Defendant, as follows:

A.   Awarding damages in favor of Plaintiff Concordia for breach of contract including interest and costs;

B.   Awarding an injunction against further breaches of the License Agreement; and

C.   Granting such further relief as the Court deems just and equitable under the circumstances.

Dated: September _19_, 2002

**PLAINTIFFS ARMADILLO DISTRIBUTION ENTERIPRISES, INC.  AND
CONCORDIA INVESTMENT PARTNERS, INC.
RESPECTFULLY DEMAND AND REQUEST A TRIAL BY JURY.**

By: _____

**CARLTON FIELDS, P.A.
Andrew C. Greenberg, Trial Counsel**
Florida Bar No. 926726
P.O. Box 3239
Tampa, FL  33601-3239
Telephone: (813) 223-7000
Facsimile:  (813) 223-4133
E-mail:  agreenberg@carltonfields.com

**Attorney for the Plaintiff**

# Exhibit A



## UNITED STATES PATENT AND TRADEMARK OFFICE



*TESS was last updated on Wed Sep 18 04:32:44 EDT 2002*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | Browse Dict | BOTTOM | HELP |

Please logout when you are done to release system resources allocated for you.

# Record 1 out of 1

**Check Status** *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | DEAN |
| **Goods and Services** | IC 015. US 002 021 036. G & S: Guitars. FIRST USE: 19771231. FIRST USE IN COMMERCE: 19771231 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 031701 270305 |
| **Serial Number** | 76346586 |
| **Filing Date** | December 10, 2001 |
| **Published for Opposition** | May 28, 2002 |
| **Registration Number** | 2609816 |
| **Registration Date** | August 20, 2002 |
| **Owner** | (REGISTRANT) Concordia Investment Partners, Inc. CORPORATION FLORIDA 1505 North Florida Avenue Tampa FLORIDA 33601 |
| **Attorney of Record** | Robert F. Frijouf |
| **Prior Registrations** | 2174532;2182059 |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |

# Exhibit
# B

## AGREEMENT

AGREEMENT made this 6th day of DECEMBER 1995 by and between Skytronics Electrical, Inc. d/b/a Tropical Music Corporation ("**Skytronics**"), a Florida corporation with offices at 6933 N.W. 51st Street, Miami, FL 33166, and Washburn International, Inc., ("**Washburn**"), an Illinois corporation, c/o Horing, Welikson & Bienstock, P.C., 250 West 57th Street, Suite 1917, New York, NY 10107, ATT: Ronald S. Bienstock, Esq.

WHEREAS, **Washburn** makes and sells guitars known as the "Dime Model."

WHEREAS, **Skytronics** is the owner of certain registered trademarks known as the "Dean Logo" and "Dean," Registration numbers 1,513,524 and 1,513,525, respectively, (collectively referred to as "Trademarks"); and

WHEREAS, **Skytronics** is desirous of licensing such marks for use on certain Dime Model Washburn guitars

NOW, therefore in consideration of the above and for other valuable and good consideration, the parties agree as follows:

1       **Skytronics** and its successors and assigns hereby grant **Washburn** a license to use the Trademarks of **Skytronics**, only for Dime Model guitars manufactured for or by **Washburn** as provided for in para. 3 below ("Guitar(s)"). The trademark for said Guitar(s) shall be limited under this agreement to that used on the Guitar(s) provided in Para. 3 below.

2       This license is not divisible, and is exclusive to **Washburn**. Such license may not be assigned by **Washburn** to any other person, corporation or entity, either directly or indirectly.

3.       Upon the execution of this AGREEMENT, the parties shall agree upon the quality of the Washburn Guitar(s) made and sold under this license. Two (2) representative Dime Model Washburn Guitars shall be displayed at the annual winter National Association of Music Merchants ("NAMM") convention, where such instruments may be viewed by **Skytronics**. **Skytronics** may retain one of said guitars if it so desires. Said Guitars shall represent the type and quality standards required to be maintained under this AGREEMENT. **Washburn** warrants that it shall not lessen the quality of the Guitar(s) produced pursuant to this AGREEMENT in comparison to the representative samples displayed at such NAMM show. **Washburn** reserves the right to produce other Dime Model Guitar(s), either lower or higher in retail price than the Guitar(s) model contemplated herein, as long as the quality does not fall below **Washburn's** present manufacturing standards for each applicable model.

4.       In consideration of the license granted herein, **Washburn** shall pay to **Skytronics** a royalty of $3.00 per Dime Model Guitar(s) sold. Said royalties, and accompanying royalty statements, should be in accordance with **Washburn's** standard royalty payment procedures and shall be paid on a quarterly basis within thirty (30) days of the end of each quarter.



RECEIVED
MAY - 2 1997

5.      **Skytronics** shall, with an accountant of its own choosing, have the right to review the books and records of **Washburn** at **Washburn's** corporate offices during regular business hours. Such right may be exercised no more than once per year, and requires fifteen (15) days written notice to **Washburn**.

6       **Skytronics** assumes no liability to **Washburn** or third parties with respect to the performance of Dime Model Guitars manufactured or sold by **Washburn**.    **Washburn** shall indemnify and hold harmless **Skytronics** from all claims of third persons arising out of the manufacture or sale of  Dime Model Guitars    **Skytronics** shall indemnify and hold harmless **Washburn** from any and all breaches of warranties and representations made by it herein  and from any and all actions by third parties challenging **Washburn's** exercise of the rights granted under this license  Such liability shall not exceed the total amount of royalties earned by **Skytronics** hereunder as of the date any such action is commenced; notwithstanding the foregoing, such limit shall not apply if **Skytronics** breaches any of the warranties and representations made by it herein.

7       Except as otherwise provided herein, this AGREEMENT shall remain in full force and effect for a period of five years commencing from October 1, 1995; provided, however,  if **Washburn** makes any assignment of assets or business for the benefit of creditors, or if a trustee or receiver is appointed to administer or conduct its business, or if any voluntary or involuntary petition in bankruptcy is filed against or by **Washburn**, then the rights granted herein shall forthwith cease and terminate subject to paragraphs 8 & 9 below.  In the event that **Washburn** fails to comply with any provision of this AGREEMENT, **Skytronics** must give **Washburn** written notice of the nature of the breach and afford **Washburn**  not less than thirty (30) days in which to cure such alleged default

8.      **Washburn** acknowledges **Skytronics'** exclusive right, title, and interest in and to the Trademarks and will at no time do or cause to be done any act or thing contesting or in any way impairing or tending to impair any part of such right, title and interest.  **Washburn** in no way admits any infringement of the Trademarks through its exercise of the rights given under this license, nor shall such infringement be inferred by **Washburn's** use of the trademarks in any way.  Except for the trademark,  right, title and interest to the Dime Model as a whole, and the intellectual property contained therein, shall belong in  perpetuity to **Washburn**. Upon termination of this AGREEMENT in any manner provided herein, **Washburn** shall have one year ("Sell-Off Period") from such date to sell any remaining **Washburn** Dime Model Guitars.   After the Sell-Off Period, **Washburn** shall cease and desist from all use of the Trademarks in any way.

10.     Any notices given pursuant to this AGREEMENT shall be deemed sufficiently given if sent by registered or certified mail, return receipt requested, to the address noted for the respective party at the beginning of this AGREEMENT, or at such other address as may be furnished in writing to the notifying party, if different from the above.

11.     This AGREEMENT shall be governed by and interpreted in accordance with the laws

2



of the State of Florida,and courts of the State of Florida or federal courts sitting within the State of Florida shall have exclusive jurisdiction over any dispute arising hereunder.

In witness whereof this AGREEMENT has been executed as of the day and year first above written.

WASHBURN INTERNATIONAL, INC.

By _____

    President

SKYTRONICS ELECTRICAL, INC.

By _____

    Oscar Mederos - President

of the State of Florida, and courts of the State of Florida or federal courts sitting within the State of Florida shall have exclusive jurisdiction over any dispute arising hereunder.

In witness whereof this AGREEMENT has been executed as of the day and year first above written

WASHBURN INTERNATIONAL, INC.

By: _____
                        President

SKYTRONICS ELECTRONICS, INC.

By: _____
            Oscar medeiros
                    President