

# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### Tampa Division

--------------------------------------------------------X

ARMADILLO DISTRIBUTION                    :
ENTERPRISES INC., et al.                  :
                                          : Case Number: 8:02-CV-1703-T-27MAP
         v.                               :
                                          :
                                          :
WASHBURN INTERNATIONAL, INC.              :
--------------------------------------------------------X

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS

Defendant Washburn International, Inc. ("Washburn"), an Illinois corporation, with a

principal place of business at 444 East Courtland Street, Mundelein, Illinois, by its attorneys

Bienstock & Michael, P.C. and Mary Ann Diez Floyd, Esq., as and for its answer to Plaintiffs'

Armadillo Distribution Enterprises Inc. ("Armadillo") and Concordia Investment Partners, Inc.

("Concordia") (collectively, the "Plaintiffs") Complaint filed on October 2, 2002 (the

"Complaint"), respectfully alleges as follows:

1-2.    Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in ¶¶1-2 of the Complaint.

3.      Admits the allegations contained in ¶3 of the Complaint.

4-5.    Paragraphs 4 & 5 contain conclusions of law to which no answer is required.

6.      Denies knowledge or information sufficient to form a belief as to the truth of

the allegation contained in ¶6 of the Complaint.

7.      Paragraph 7 is drafted in a manner that is too vague to enable Washburn to

formulate a proper response thereto.

8.      Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in ¶8 of the Complaint.



9.      Admits the allegations contained in ¶9 of the Complaint.

10.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶10 of the Complaint.

11.      Denies the allegations contained in ¶11 of the Complaint to the extent that Plaintiffs contend that the marks have been used continuously in commerce since 1977.  In respect to Plaintiffs' allegations that its Name and Winged Design trademarks are well known throughout the United States and the world defendant denies knowledge or information sufficient to form a belief as to the truth of such allegation.  Defendant denies that the Dean Trade Dress is known throughout the world as a source identifier of Plaintiffs.

12-13.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶¶12-13 of the Complaint.

14.      Defendant admits the allegations contained in ¶14 insofar as the U.S. Patent and Trademark Office (the "PTO") website indicates that the mark "DEAN" was registered by Concordia on August 20, 2002.  Defendant denies knowledge or information sufficient to form a belief as to plaintiffs' allegation that Concordia has given notice of its registered rights in its mark by using a "®" symbol in connection therewith.

15.      Defendant denies the allegations contained in ¶15 of the Complaint except admits that Defendant's guitar model marketed under the trademark "DIME" (the "Dime Model guitar") was designed on or about August 1994 and that while Defendant's guitar body design and headstock design is similar to Plaintiffs' designs, Defendant obtained a license to all intellectual property that Plaintiff's alleged predecessor claimed ownership to and received the Plaintiff's alleged predecessor-in-interest's approval and assent of the Dime Model guitar.  Accordingly, Defendant denies that its product is a "knockoff" of Plaintiff's alleged

2

predecessor-in-interest's product.  Further, Defendant states that its "Dime & Logo" mark is not substantially similar to Plaintiff's "Dean & Logo" mark.

16.     Defendant denies the allegations contained in ¶16 of the Complaint but admits that it entered into a license agreement (the "Agreement") with a purported successor-in-interest to Dean Guitars, Skytronics Electrical, Inc. d/b/a Tropical Music Corporation ("Skytronics"), for the marks "DEAN" and "Dean & Logo" (the "Licensed Marks") which Defendant had planned to use on the Dime Model guitar.  Defendant denies knowledge or information as to whether Skytronics is a predecessor-in-interest to Plaintiff.

17.     Defendant admits the allegations in ¶17 insofar as it took such obligations in respect solely to the marks the Licensed Marks, "DEAN" and "Dean & Logo."  Plaintiffs have omitted material clauses to this provision of the Agreement relating to Defendant's right to use its body shape and headstock design trademarks.

18.     Defendant admits the allegations in ¶18 of the Complaint insofar as the Agreement's provisions specify October 1, 2000 as the end of the Term.

19.     Defendant admits the allegations in ¶19 insofar as it has continued to sell its Dime Model guitars from August 1994 to the present.  However, Defendant denies that it has ever had an obligation to "sell remaining inventory" because Defendant has never sold Dime Model guitars containing the Licensed Marks, "DEAN" and "Dean & Logo".

20.     Denies the allegations contained in ¶20 except admits that it has continued to sell its Dime Model guitars from August 1994 to the present.

21.     Defendant admits the allegations contained in ¶21 insofar as it has taken affirmative action against Plaintiff solely to protect its trademark rights to the guitar body design and headstock design contained in its Dime Model guitar.  The remaining allegations

3

contain conclusions of law to which no answer is required, however Defendant states that the

Agreement only involved the Licensed Marks "DEAN" and "Dean & Logo," and Defendant has

never claimed rights to such marks nor requested either of the Plaintiffs to stop using such

marks.

      22.     Defendant admits the allegations contained in ¶22 insofar as the Plaintiffs'

guitar body and headstock design are confusingly similar to Defendant's guitar body and

headstock design on its Dime Model guitar.

      23.     Defendant denies the allegations contained in ¶23 of the Complaint.

      24-25.     Defendant admits the allegations contained in ¶¶24-25 of the Complaint.

      26.     Defendant admits the allegations in ¶26 insofar as the Plaintiffs' guitar body

and headstock design are confusingly similar to the guitar body and headstock design on

Defendant's Dime Model guitar which Defendant has applied for registration with the PTO.

However, Defendant believes, upon information and belief, that it has an earlier first date of

continuous use of its trademarks and thus denies that such applications were fraudulent.

      27-28.     Denies the allegations contained in ¶¶27-28 of the Complaint, except admits

that it knew that the Licensed Marks were used prior to 1994 and upon information and belief,

such trademark rights were subsequently abandoned.  Furthermore, Defendant states that it

knew of an earlier historical usage of a headstock and body design that is similar to Defendant's

Dimebag Headstock and Body Design and that such usage was abandoned at the time

Defendant adopted its trademarks.

      29-30.     Defendant admits the allegation in ¶¶29-30 of the Complaint.

31.     Defendant denies the allegations contained in ¶31 of the Complaint except admits that the issues of distinctiveness and secondary meaning are issues that are material to the registrability of a product configuration trademark.

32.     Defendant admits the allegations contained in ¶32 of the Complaint insofar as Defendant, upon information and belief, has an earlier first date of continuous use of its trademarks and has superior rights to its body shape and headstock design trademarks. Consequently, Defendant believes that it is the only entity entitled to use such trademarks. Therefore, Defendant did not disclose Plaintiff's subsequent first date of usage and Plaintiff's alleged rights to same which Defendant contests.

33.     Defendant admits the allegations contained in ¶33 of the Complaint.

34.     Defendant admits the allegations contained in ¶34 of the Complaint except denies that Defendant's applications were fraudulent.

35 & 37. Defendant denies the allegations contained in ¶¶35 & 37 of the Complaint and states that is has never used the Registered Dean Marks or a confusingly similar variation thereof.

38-9.     Paragraphs 38 and 39 are drafted in a manner that is too vague to enable Washburn to formulate a proper response thereto.

40.     Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in ¶40 of the Complaint.

41.     Defendant denies the allegations contained in ¶41 of the Complaint.

42.     Paragraph 42 of the Complaint contains conclusions of law to which no answer is required.

44-45.     Defendant denies the allegations contained in ¶¶44-45 of the Complaint.

5

46.     Defendant denies the allegations contained in ¶46 to the extent that Plaintiff alleges that Defendant committed wrongful activities, but Defendant admits that it is a corporation that operates for profit and that its manufacture and distribution of its Dime Model guitars is for such purposes.

47.     Defendant denies the allegations contained in ¶47 except admits that Washburn intends to continue to sell its Dime Model guitars.

48.     Paragraph 48 contains conclusions of law to which no answer is required, but to the extent such an answer is required Defendant denies that Plaintiffs have suffered damages by Defendant's actions.

49.     Paragraph 49 contains conclusions of law to which no answer is required.

51.     Paragraph 51 contains conclusions of law to which no answer is required, but to the extent such an answer is required Defendant admits that it will continue to sell its Dime Model guitars.

52.     Paragraph 52 contains conclusions of law to which no answer is required, but to the extent such an answer is required Defendant denies that Plaintiffs have suffered damages by Defendant's actions.

53 & 55. Paragraphs 53 & 55 contain conclusions of law to which no answer is required.

57.     Paragraph 57 contains conclusions of law to which no answer is required, but to the extent such an answer is required Defendant denies that Plaintiffs have suffered damages by Defendant's actions.

58.     Paragraph 58 contains conclusions of law to which no answer is required.

6

60.     Defendant denies the allegations contained in Paragraph 60 with respect to all of the trademarks except the word mark "DEAN" and "DEAN & Logo" which Defendant has never used.

61.     Defendant denies the allegations contained in Paragraph 61 except admits that Defendant knows that Plaintiff has a prior use of the word mark "DEAN" because Defendant has never used such mark.

62.     Defendant denies the allegations contained in Paragraph 62.

63.     Defendant denies the allegations contained in Paragraph 63, except admits that Defendant is seeking registration of its headstock design trademark subject to Serial No. 78/081920.

64.     Paragraph 64 contains conclusions of law to which no answer is required, but to the extent such an answer is required Defendant denies that Plaintiffs are the senior users of any of the Dean Marks other than the word mark "DEAN" which Defendant has never used.

65.     Paragraph 65 contains conclusions of law to which no answer is required.

67.     Admits the allegations contained in Paragraph 67 of the Complaint.

68.     Paragraph 68 contains conclusions of law to which no answer is required.

69.     Admits the allegations contained in Paragraph 69.

70.     Denies the allegations contained in Paragraph 70 of the Complaint.

71.     Paragraph 71 contains conclusions of law to which no answer is required.

72.     Paragraph 72 contains conclusions of law to which no answer is required.

74.     Denies the allegations contained in Paragraph 74 in the Complaint, and declares that ¶10 of the Agreement solely states that after a sell-off period, "Washburn shall

cease and desist from all use of the Licensed Marks in any way."  While Defendant had planned

to use the Licensed Marks on the Dime Model guitar, Defendant had never incorporated the

Licensed Marks on the Dime Model guitar.

75.      Denies the allegations contained in Paragraph 75 in the Complaint

specifically that the Agreement obliges Defendant to cease and desist from using any of the

Dean Marks except for the Winged Design and Name.

76.      Paragraph 76 contains conclusions of law to which no answer is required.

77.      Denies knowledge or information sufficient to form a belief as to the truth of

the allegations contained in ¶77 of the Complaint.

78-9.    Denies the allegations contained in ¶¶78-9 of the Complaint.

80.      Denies the allegations contained in ¶80, except admits that Defendant has

continued to sell its Dime Model guitars from August 1994 to the present.

81.      Paragraph 81 contains conclusions of law to which no answer is required.

However, to the extent an answer may be required, Defendant denies that Plaintiff has suffered

damages as a result of Defendant's conduct.

82.      Paragraph 82 contains conclusions of law to which no answer is required.

## AS AND FOR A FIRST AFFIRMATIVE DEFENSE

83.      Plaintiffs' claims are barred under the doctrine of Laches because Defendant

has used the body shape and headstock design trademarks contained in the Dime Model guitar

(the "Washburn Trademarks") for over five (5) years without Plaintiffs asserting any right or

claim to such trademarks, or requesting that Defendant obtain a license or consent from

Plaintiffs.  Plaintiffs delay in asserting any right or claim to Washburn's body shape and

8

headstock design trademarks is without any excuse or justification. Plaintiffs' delay in bringing this claim will cause Washburn undue prejudice.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

84.     Plaintiffs claims are barred under the doctrine of Waiver.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

85.     Any liability which may exist on the part of Defendant based on its performance or lack thereof under the Agreement, is completely indemnified by Section 6 of the Agreement.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

86.     Plaintiffs fail to state a claim as to which relief can be granted.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

87.     Plaintiffs' claims are barred under the doctrine of Fraud because Plaintiff committed fraud by prosecuting a trademark applications with the PTO that (i) contained a fraudulent claimed first dates of usage, and (ii) did not reveal Washburn's right to use and actual usage of such mark in commerce.  Moreover, Plaintiff committed fraud by expressly misrepresenting to Washburn in the Agreement that the Licensed Marks were registered with the PTO at that time, which caused Washburn to pay royalties to Plaintiff in error.

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

88.     Plaintiff's claims are barred under the doctrine of Unclean Hands because Plaintiff fraudulently prosecuted trademark applications with the PTO that (i) contained fraudulent first dates of usage, and (ii) did not reveal Washburn's right to use and actual usage of such mark in commerce.  Moreover, Plaintiffs' claims are barred under the doctrine of

9

Unclean Hands because Plaintiffs expressly misrepresented in the Agreement with Washburn that the Licensed Marks were registered with the PTO at that time, which caused Washburn to pay royalties to Plaintiff in error.

## AS AND FOR A SEVENTH AFFIRMATIVE DEFENSE

89.      Plaintiffs' claims are barred, in whole or in part, by the applicable statute of limitations since Plaintiffs and their alleged predecessors-in-interest first found out about Washburn's usage of Washburn's Trademarks without Plaintiffs' consent or a license over five (5) years before this action.

## AS AND FOR AN EIGTH AFFIRMATIVE DEFENSE

91.      Plaintiff's claims are barred by the doctrine of equitable estoppel.  Plaintiff and its alleged predecessors were fully aware of Defendant's manufacture, distribution and marketing of its Dime Model guitars and pursuant to the Agreement, approved the quality of such guitars.  Plaintiffs had not expressed any concerns over Defendant's headstock design and body shape contained thereon for over five (5) years thereafter.  Washburn relied on Plaintiffs approval of its Dime Model guitars and the intellectual property contained thereon and proceeded to invest substantial funds into establishing the goodwill of such marks. Accordingly, the application of the doctrine of equitable estoppel is appropriate in order to prevent a manifest injustice.

## AS AND FOR A NINTH AFFIRMATIVE DEFENSE

92.      Plaintiffs, alternatively, cannot bring this action because they lack standing.

10

## DEFENDANT'S COUNTERCLAIM FOR INJUNCTIVE

## AND OTHER RELIEF AND DEMAND FOR JURY TRIAL

Defendant Washburn International, Inc., an Illinois corporation counterclaims against Plaintiffs, Concordia Investment Partners, Inc. and Armadillo Distribution Enterprises, Inc., and alleges as follows.

1.      Defendant Washburn International, Inc. ("Washburn") is in the business of manufacturing and selling musical instruments, including, but not limited to, guitars.

2.      Plaintiff Concordia has alleged that it is the successor-in-interest to Skytronics Electrical Inc., a Florida corporation with an address at 7091 N.W. 51st Street, Miami, FL 33166 ("Skytronics").  Upon information and belief, Skytronics is the successor-in-interest to Dean Guitars Inc. ("Dean Guitars").  Upon information and belief, Dean Guitars, is an inactive corporation that used to conduct business in the musical instrument industry and had a business address of 6417 N. Ravenswood Ave., Chicago, Illinois 60626.

3.      Upon information and belief, Plaintiff Armadillo, a Florida corporation with an address at 15251 Roosevelt Boulevard, Clearwater, Florida, is the exclusive licensee of Concordia.

4.      This is an action for damages, injunctive relief and other appropriate relief. The claims set forth in these counterclaims arise under the trademark laws of the United States, the laws of unfair competition, the common law of Florida, contract law for the State of Florida, and the law governing negligent and fraudulent misrepresentation under the State of Florida.

11

<u>Background</u>

5.     On or about 1988, Dean Guitars initially filed for bankruptcy and soon thereafter discontinued all of its business activities in interstate commerce.

6.     Between 1990 and August 1994, Dean Guitars had ceased all commercial manufacture, promotion and distribution of the guitars at issue and were no longer available in the relevant marketplace.

7.     Upon information and belief, the amount of time that Dean Guitars had ceased manufacturing, promoting and distributing its guitars in commerce was for over three (3) years.

8.     Upon information and belief, Dean Guitars transferred title to its intellectual property rights to at least one (1) third party other than Plaintiffs or Skytronics in the late 1980s.

9     Upon information and belief, title to Plaintiffs' asserted intellectual property rights had been broken before Dean Guitars' transferred such rights to Skytronics, and Skytronics has never had full title to Dean Guitars' asserted intellectual property rights.

10.    Darrell "Dimebag" is a professional musician (the "Artist") that used to play Dean Guitars' ML model guitar.  The Artist had purchased his Dean Guitar instruments in used condition from one (1) or more pawnshops.

11.    In 1994, the Artist could not find any such suitable new guitars in the marketplace.  Darrell "Dimebag" then approached Washburn and asked if Washburn could design a guitar for him.  Shortly thereafter, Washburn's Dime Model guitar was designed.

12.    By August 1994, Washburn began manufacturing, marketing, and distributing its Dime Model guitars in interstate commerce.  During the course of such business

12

activities Washburn invested substantial funds into the creation of goodwill in its guitars and the intellectual property associated therewith, including, but not limited to, the Washburn Trademarks.

The Agreement

13.     In 1995, Washburn and Skytronics, began negotiating a license to allow Washburn to incorporate certain of Dean's trademarks into Washburn's Dime Model guitars. Washburn had believed that such trademarks were subject to active trademark registrations with the PTO,

14.     Skytronics desired to have a license that contemplated the respective parties usage of various marks at question.

15.     The parties in their negotiations reached an understanding on the status of the parties' rights to the respective marks in question, including, but not limited to, the headstock and body shape designs.

16.     In December 1995, the parties reached an agreement as to the proposed license after having a full opportunity to advance their respective concerns and interests throughout the course of their negotiations.

17.     On December 6, 1995, Washburn and Skytronics executed the Agreement which provided a license to allow Washburn to use Skytronics' purportedly registered trademarks "DEAN" and "DEAN & Logo" on its Dime Model guitar in exchange for a royalty payment equal to $3.00 per guitar (the "Royalty").

18.     While the Agreement was specifically for Skytronics' marks "DEAN" and "DEAN & Logo", in order to clarify the parties' understanding as to their respective rights to

13

any other intellectual property contained in its Dime Model guitars, the Agreement contained specific provisions that defined Washburn's rights to the Washburn Trademarks.

19.     More specifically, the Agreement expressly contained an acknowledgment on the part of Skytronics that aside from Skytronics' marks "DEAN" and "DEAN & Logo" "all right, title and interest to the Dime Model as a whole, and the intellectual property contained therein, shall belong in perpetuity to Washburn."

20.     Accordingly, Washburn has always believed that pursuant to the Agreement, the rights to the Washburn Trademarks belonged solely to Washburn.

21.     The Agreement also contained representations by Skytronics that it owned federal trademark rights for the marks "DEAN" and "DEAN & Logo".

<u>The Parties' Respective Performances</u>

22.     While Defendant had planned to use the marks "DEAN" and "DEAN & Logo" on the Dime Model guitar, Defendant had never incorporated the Licensed Marks into its Dime Model guitar.

23.     Instead Defendant used its own unique and distinctive marks "DIME" and "DIME & Logo" on the guitars.

24.     Pursuant to the Agreement, two (2) representative Dime Model guitars were displayed for Skytronics' review at the Winter National Association of Musical Merchant convention, and Skytronics was able to retain one of such representative instruments for its own use (the "Sample Instruments").

25.     The Dime Model guitars manufactured, distributed, and marketed by Washburn from 1994 through the present, including the Sample Instruments contained

14

Washburn's Trademarks, but Washburn did not receive from Skytronics or its alleged successors-in-interest any notice of contest or disapproval of the instruments or the intellectual property contained therein for over five (5) years.

26.     Even though Defendant did not use the Licensed Marks, namely "DEAN" and "Dean & Logo", Defendant paid Royalties to Skytronics and then to Concordia throughout the term of the Agreement from December 6, 1995-December 6, 2000.

27.     Unbeknownst to Washburn, and in direct contradiction with Skytronics' representations contained in the Agreement, the purportedly registered marks "DEAN" and "DEAN & Logo" had been cancelled by the PTO on May 29, 1995.

28.     Even though Plaintiff did not own a federal registration for its marks, namely "DEAN" and "Dean & Logo", Defendant paid Royalties to Skytronics and then to Concordia throughout the term of the Agreement from December 6, 1995-December 6, 2000.

29.     After entering into the Agreement, from December 1995 - December 2000, Washburn continued to spend a massive amount of money to promote its Washburn Trademarks in various media in interstate commerce including on promotional materials, cartons, labels, and packaging, in order to establish such marks as a source identifier for Washburn's goods.

30.     As a result of the extensive sales, advertising and promotion of Washburn's Dime Model guitars, the Washburn Trademarks have earned significant goodwill and commercial recognition.

31.     From December 1995 - June 2001, Washburn did not receive any correspondence from Plaintiffs or their alleged predecessors-in-interest concerning any issues regarding Washburn's usage of the Washburn Trademarks.  In fact, the only correspondence

15

Washburn received from either Plaintiffs or their alleged predecessors-in-interest concerned Royalty payments made by Washburn to such parties.

32.     On November 27, 2000, Washburn sent a letter to Plaintiffs concerning the conclusion of the Term of such Agreement. Washburn stated that it would not sell any goods using the marks "DEAN" or "DEAN & Logo" after the end of the term of the Agreement and pursuant to the Agreement it will account for sales made up to the termination date. Washburn also confirmed that it would continue to sell its Dime Model guitars which feature the Washburn Trademarks and Washburn's marks "DIME" and "DIME & Logo" after the termination of the Agreement.

Plaintiff's Fraudulent Trademark Applications

33.     On information and belief, on November 29, 2000, merely two (2) days after Washburn sent its correspondence to Armadillo, despite Plaintiff and Plaintiff's alleged predecessor-in-interest's obligations under the Agreement and Plaintiffs' actual knowledge of Defendant's usage of its Washburn Trademarks, Plaintiff Concordia fraudulently filed three (3) trademark applications with the PTO (the "Plaintiff's Applications").

34.     More specifically, on November 29, 2000 Concordia filed an application with the Serial No. 76172952 for a body design trademark that is substantially similar to Washburn's Dime Model body design.

35.     Concordia also filed on November 29, 2000, an application with the Serial No. 76172951 for a headstock design trademark that is similar to Washburn's Dime Model headstock design.

16

36.     Finally, on November 29, 2000, Concordia filed a trademark with the Serial No. 76172953 for the entire trade dress of a guitar which feature a headstock design and body shape that are confusingly similar to Washburn's Trademarks.

37.     Upon information and belief, Concordia attested within Plaintiff's Applications that it believes that it is entitled to use such mark in commerce and to the best of its knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in identical form or in such near resemblance thereto as to be likely to cause consumer confusion.

38.     The statements made by Plaintiff in its three (3) trademark applications are false because Concordia was fully aware of the rights granted to Defendant under the Agreement as well as Defendant's open, notorious, and substantial continuous usage of the Washburn Trademarks from August 1994 to the filing date of Plaintiff's Applications.

39.     These statements are material to the registrability of the marks subject to Plaintiff's Applications.  Notwithstanding the preceding, Plaintiff did not disclose the rights granted under the Agreement to the PTO nor did it disclose Defendant's continuous usage of such trademarks in commerce.

40.     Each of Plaintiff's Applications as well as Plaintiff's applications for the marks; "DEAN & Logo" filed on December 10, 2001 and registered on August 20, 2002 (Reg. No. 2609816), "Miscellaneous Design (Stylized Wing Logo)" filed on December 10, 2001 (Serial No. 76346587), and "Dean (Stylized)" filed on December 10, 2001 (Serial No. 76346576), claims a first date of use of December 31, 1977.

17

41.     Plaintiff is fully aware that its alleged predecessors-in-interest and/or itself had not used the marks for at least one (1) period of three (3) years or more after its claimed first date of use.  Accordingly, Plaintiff's cannot have a first date of continuous usage of December 31, 1977 for the marks subject to Plaintiff's Applications.

42.     The issue of Plaintiff's first dates of use is material to the registrability of the marks subject to Plaintiff's Applications.

<u>Washburn's Ownership of the Washburn Trademarks</u>

43.     Plaintiffs' first date of continuous usage of its substantially similar body shape and headstock design is subsequent to Washburn's first date of usage of the Washburn Trademarks.

44.     As of August 2001, Washburn had used the Washburn Trademarks in a continuous and substantially exclusive manner for over seven (7) years without any license or consent from Plaintiffs or their alleged predecessors-in-interest.

45.     On August 30, 2001, Washburn filed a trademark application with the PTO for each of the Washburn Trademarks.

46.     On July 2, 2002, the PTO approved Washburn's body design for registration on the PTO's Principal Registry and was issued a Registration No. 2588629.  Plaintiffs did not oppose Washburn's application.

47.     Washburn's trademark registration constitutes <u>prima facie</u> evidence of the validity of the mark as well as its continued use of the registered mark,

18

48.     Throughout Washburn's eight (8) years of using the Washburn Trademarks, it has invested substantial funds in the goodwill of the Washburn Trademarks and has single-handedly developed the present market for guitar models featuring such marks.

<u>Plaintiffs' Infringement of the Washburn Trademarks</u>

49.     Upon information and belief, Plaintiffs began to manufacture, market and distribute guitars featuring trademarks that are substantially similar to the Washburn Trademarks after Defendant's first date of continuous usage.  Plaintiffs have not sought a license or other form of permission from Washburn.

50.     Furthermore, Plaintiffs and/or its representatives have deliberately and intentionally contacted Artist's management and attempted to get the Artist to breach his existing contract with Washburn for the promotion and endorsement of Washburn's Dime Model guitar.

51.     Washburn has attempted to enforce its federal trademark rights and goodwill to its body shape by sending to Plaintiffs a cease and desist letter, advising them to discontinue using marks substantially similar to Washburn's Trademarks.

52.     Plaintiffs refused to stop its usage of such marks and instead filed the present action to protect its allegedly superior trademark rights to the relevant headstock and body shape designs.

53.     Neither Plaintiffs nor their alleged predecessors-in-interest had required a license or asserted any rights to the Washburn Trademarks for over five (5) years.

54.     Washburn's substantial investments in its Dime Model guitars have established the current marketplace for guitars similar to the Dime Model guitar.

19

55.      Plaintiffs' have attempt to benefit from Washburn's vast expenditures which established goodwill in the Washburn Trademarks and now seek to convert such value for its own benefit by filing this current action.

COUNT I   (Federal Trademark Infringement)

56.      Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55 of this Counterclaim, as and for Paragraph 56 of this Count I, as though fully set forth herein.

57.      The acts of Plaintiffs in using and appropriating the Washburn Trademarks through the unauthorized sale of guitars featuring Washburn's registered trademark are likely to cause confusion or mistake or to deceive the public.

58.      Washburn has demanded that Plaintiffs refrain from violating the exclusive rights that Washburn has in its registered mark and cease all promotion, sale, marketing, and all other uses of Plaintiff's guitars that feature marks which are substantially similar to the Washburn Trademarks.  Plaintiffs have refused and continue to refuse to recognize Washburn's federal trademark rights.

59.      Plaintiffs conduct, as set forth above, constitutes an infringement of Washburn's federal trademark rights in violation of Section 32 of the Lanham Act, 15 U.S.C. §1114(1).

60.      Washburn has no adequate remedy at law because the Washburn registered trademark is unique and represents to the public Washburn's business identity, reputation and goodwill, such that damages alone cannot fully compensate Washburn for the Plaintiffs' misconduct.

20

61.     Unless enjoined by the Court, Plaintiffs will continue to infringe Washburn's rights to the Washburn Trademark, to the irreparable injury of Washburn.  This threat of future injury to Washburn's business identity, goodwill, and reputation requires injunctive relief to ameliorate and mitigate the injury to Washburn.

62.     As a direct and proximate result of the conduct of Plaintiffs, Washburn has been damaged in an amount to be proven at trial.

COUNT II   (Common Law Trademark Infringement)

63.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55 & 57-62 of this Counterclaim, as and for Paragraph 63 of this Count II, as though fully set forth herein.

64.     Plaintiffs' conduct in the promotion, sale, and marketing of guitars that feature marks which are substantially similar to the Washburn Trademarks is likely to cause confusion or mistake or to deceive the public.

65.     Plaintiffs' conduct, as set forth above, constitutes an infringement of Washburn's common law rights to the Washburn Trademarks.

67.     Washburn has no adequate remedy at law because the Washburn Trademarks are unique and represent to the public Washburn's business identity, reputation and goodwill, such that damages alone cannot fully compensate Washburn for the Plaintiffs' misconduct.

68.     Unless enjoined by the Court, Plaintiff will continue to infringe Washburn's rights to the Washburn Trademark, to the irreparable injury of Washburn.  This threat of future injury to Washburn's business identity, goodwill, and reputation requires injunctive relief to ameliorate and mitigate the injury to Washburn.

21

69.     As a direct and proximate result of the conduct of Plaintiffs, Washburn has been damaged in an amount to be proven at trial.

COUNT III (Lanham Act - Unfair Competition)

70.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62 & 64-69 of this Counterclaim, as and for Paragraph 70 of this Count III, as though fully set forth herein.

71.     The foregoing acts, practices and conduct constitutes unfair competition, false designation of origin, false or misleading descriptions of fact, false advertising, fraud, or unfair or deceptive trade practices that are likely to cause confusion or mistake, or to deceive as to affiliation, association, origin, sponsorship or approval of Plaintiffs' goods, services or commercial activities, in violation of 15 U.S.C. §1125(a).

72.     As a direct and proximate result of the foregoing acts, practices and conduct, Washburn has been, or is likely to be, substantially injured in its business, including its reputation, resulting in lost revenues and profits, and diminished goodwill and reputation.

73.     Washburn has no adequate remedy at law because the Washburn Trademarks are unique and represent to the public Washburn's business identity, reputation and goodwill, such that damages alone cannot fully compensate Washburn for the Plaintiffs' misconduct.

74.     Unless enjoined by the Court, Plaintiffs will continue to make false descriptions or representations and to engage in unfair competition, to the irreparable injury of Washburn.  This threat of future injury to Washburn's business identity, goodwill, and reputation requires injunctive relief to prevent Plaintiffs' continued unfair competition and to ameliorate and mitigate the injury to Washburn.

22

75.      As a direct and proximate result of the conduct of Plaintiffs, Washburn has been damaged in an amount to be proven at trial.

COUNT IV (Common Law Unfair Competition)

76.      Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69 & 71-75 of this Counterclaim, as and for Paragraph 76 of this Count IV, as though fully set forth herein.

77.      The foregoing acts, practices and conduct of Plaintiffs are likely to confuse and mislead the public into believing that Plaintiffs and the Plaintiffs' products are associated with or endorsed by Washburn, thereby unfairly providing benefits to the Plaintiffs from the goodwill and reputation associated with the Washburn Trademarks.

78.      Plaintiffs' conduct in using marks that are substantially similar to the Washburn Trademarks, with full knowledge of Washburn's prior and superior rights in such trademarks, for the willful and calculated purpose of trading on Washburn's goodwill and reputation and passing off such products and services as those of Washburn's, constitutes improper and unfair competition under the common law of the State of Florida.

79.      Washburn has no adequate remedy at law because the Washburn Trademarks are unique and represent to the public Washburn's business identity, reputation and goodwill, such that damages alone cannot fully compensate Washburn for the Plaintiffs' misconduct.

80.      Unless enjoined by the Court, Plaintiffs will continue to make false descriptions or representations and to engage in unfair competition, to the irreparable injury of Washburn.  This threat of future injury to Washburn's business identity, goodwill, and

23

reputation requires injunctive relief to prevent Plaintiffs' continued unfair competition and to ameliorate and mitigate the injury to Washburn.

81.     As a direct and proximate result of the conduct of Plaintiffs, Washburn has been damaged in an amount to be proven at trial.

COUNT V          (Federal Trademark Dilution)

82.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69, 71-75 & 77-81 of this Counterclaim, as and for Paragraph 82 of this Count V, as though fully set forth herein.

83.     The Washburn Trademarks are "famous marks" within the meaning of the Lanham Act, 15 U.S.C. §1125(c)(1) because they are distinctive marks that are nationally and internationally advertised, and the Washburn Trademarks have worldwide recognition by consumers of musical instruments.

84.     The unauthorized use by Plaintiffs of Washburn's Trademarks have caused, and is likely to further cause, injury to Washburn's business reputation and to lessen the capacity of the public to identify and distinguish authentic, licensed goods and services that are endorsed and controlled by Washburn, thereby diluting the distinctive quality of Washburn's Trademarks in violation of Section 43 of the Lanham Act, 15 U.S.C. §1125(c)(1).

85.     Washburn has demanded that Plaintiffs refrain from violating its exclusive rights in and to its proprietary marks.  Plaintiffs have refused and continue to refuse to recognize its lack of authority and consent to use the Washburn Trademarks.  Instead, Plaintiffs continue to promote, offer for sale and sell new guitars featuring marks substantially similar to

24

the Washburn Trademarks, thereby violating Washburn's rights to the exclusive use of its proprietary marks, and to control the marketing, promotion and sale of its new guitars.

86.     Due to the wrongful and continuing acts of Plaintiffs as alleged herein, Washburn is entitled to injunctive relief prohibiting Plaintiffs from carrying on these activities in violation of Washburn's rights and requiring Plaintiffs to recognize its lack of authority and consent to use Washburn's Trademarks.

87.     Washburn further alleges that the acts of Plaintiffs set forth herein were and are a willful attempt to improperly trade on the name and reputation of Washburn and its proprietary marks, thereby entitling Washburn to recover lost profits, damages and attorneys' fees to be proven at the time of trial in accordance with 15 U.S.C. §1117(a).

COUNT VI         (Trademark Dilution)

88.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69, 71-75, 77-81 & 83-87 of this Counterclaim, as and for Paragraph 88 Of this Count VI, as though fully set forth herein.

89.     Plaintiffs' conduct in adopting and using a confusingly similar variation of Washburn's Trademarks has caused, is causing, and will continue to, cause injury to Washburn's business reputation and has diluted, is diluting, and will continue to, dilute the distinctive and valuable quality of Washburn's Trademarks, in violation of §495.151, Florida Statutes.

90.     Due to the wrongful and continuing acts of Plaintiffs as alleged herein, Washburn is entitled to injunctive relief prohibiting Plaintiffs from carrying on these activities in violation of Washburn's rights and requiring Plaintiffs to recognize its lack of authority and consent to use Washburn's Trademarks.

25

91.     Washburn further alleges that the acts of Plaintiffs set forth herein were and are a willful attempt to improperly trade on the name and reputation of Washburn and its proprietary marks, thereby entitling Washburn to recover lost profits, damages and attorneys' fees to be proven at the time of trial in accordance with 15 U.S.C. §1117(a).

COUNT VII          (False Designation of Origin and False Representation)

92.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69, 71-75, 77-81, 83-87 & 89-91 of this Counterclaim, as and for Paragraph 92 of this Count VII, as though fully set forth herein.

93.     The actions of Plaintiffs in marketing, advertising, promoting, offering for sale and selling merchandise with trademarks substantially similar to the Washburn Trademarks without the authorization and consent of Washburn, constitutes a false description or false representation by Plaintiffs that their products and services are provided, sponsored or authorized by, or affiliated with Washburn.

94.     The acts and conduct of Plaintiffs are willful, unfair, untrue and deceptive, in that they tend to mislead, deceive and confuse, and will have the result of misleading, deceiving and confusing the public into believing that Washburn is the manufacturer or is in some way affiliated with Plaintiffs' products.

95.     Washburn is a person within the definition of the Lanham act.  Washburn believes it has been damaged by Plaintiffs' use of a false description or false representation of the origin of Defendant's products because Plaintiffs have traded upon and have gained public acceptance and other benefits from Washburn's favorable reputation, which has accordingly been placed at risk by Plaintiff's illegal, deceitful and misleading acts.

26

96.     Plaintiffs conduct, as set forth above, constitutes, constitutes false designation of the origin of the guitars in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

97.     Washburn has no adequate remedy at law because the Washburn Trademarks are unique and represent to the public Washburn's business identity, reputation and goodwill, such that damages alone cannot fully compensate Washburn for the Plaintiffs' misconduct.

98.     Unless enjoined by the Court, Plaintiffs will continue to make false descriptions or representations and to engage in unfair competition, to the irreparable injury of Washburn.  This threat of future injury to Washburn's business identity, goodwill, and reputation requires injunctive relief to prevent Plaintiffs' continued unfair competition and to ameliorate and mitigate the injury to Washburn.

99.     As a direct and proximate result of the conduct of Plaintiffs, Washburn has been damaged in an amount to be proven at trial.

COUNT VIII     (Violation of the Florida Deceptive and Unfair Trade Practices Act)

100.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69, 71-75, 77-81, 83-87, 89-91 & 93-99 of this Counterclaim, as and for Paragraph 100 of this Count VIII, as though fully set forth herein.

101.     The acts of Plaintiffs in marketing, advertising, promoting, offering for sale and selling merchandise with trademarks substantially similar to the Washburn Trademarks without the authorization and consent of Washburn and with full knowledge of Washburn's rights to the Washburn Trademarks, for the willful and calculated purpose of trading on Washburn's goodwill and reputation and passing off such products and services as those of

27

Washburn constitutes a violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.204(1) et. seq.

102.     Washburn has no adequate remedy at law because the Washburn Trademarks are unique and represent to the public Washburn's business identity, reputation and goodwill, such that damages alone cannot fully compensate Washburn for the Plaintiffs' misconduct.

103.     Unless enjoined by the Court, Plaintiffs will continue to make deceptive descriptions or representations and to engage in unfair competition, to the irreparable injury of Washburn.  This threat of future injury to Washburn's business identity, goodwill, and reputation requires injunctive relief to prevent Plaintiffs' continued unfair competition and to ameliorate and mitigate the injury to Washburn.

104.     As a direct and proximate result of the conduct of Plaintiffs, Washburn has been damaged in an amount to be proven at trial.

COUNT IX        (Negligent Misrepresentation)

105.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69, 71-75, 77-81, 83-87, 89-91, 93-99 & 101-104 of this Counterclaim, as and for Paragraph 105 of this Count IX, as though fully set forth herein.

106.     Upon information and belief, Plaintiff Concordia is the assignee of the obligations and duties owed by Skytronics to Washburn under the Agreement.

107.     In the Agreement, Plaintiff represents that its "DEAN" and "DEAN & Logo" trademarks were registered with the PTO trademark under Registration Nos. 1,513,524 and 1,513,525.

28

108.     Plaintiff either knew that these representations were false, made this representation without knowledge of its truth or falsity, or should have known the representation was false because the Licensed Trademarks were in fact cancelled on the date of execution of the Agreement.

109.     Plaintiff intended to induce Washburn to act on this representation and cause it to enter the Agreement with Plaintiff.

110.     Washburn justifiably relied on Plaintiff's representation made in the Agreement that the Licensed Trademarks were registered, and Washburn would not have entered the Agreement but for such representation.

111.     Washburn has suffered damages in an amount to be proven at trial due to this misrepresentation including, but not limited to, paying Royalties on a license for intellectual property to which Plaintiffs did not have enforceable rights.

COUNT X          (Fraudulent Misrepresentation)

112.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69, 71-75, 77-81, 83-87, 89-91, 93-99, 101-104 & 106-111 of this Counterclaim, as and for Paragraph 112 of this Count X, as though fully set forth herein.

113.     In the Agreement, Plaintiff represents that its "DEAN" and "DEAN & Logo" trademarks were registered with the PTO trademark under Registration Nos. 1,513,524 and 1,513,525.

114.     Plaintiff knew that these representations were false and that such Licensed Marks were in fact cancelled on the date of execution of the Agreement.

29

115.    Plaintiff intended to induce Washburn to act on this representation and cause it to enter the Agreement with Plaintiff.

116.    Washburn justifiably relied on Plaintiff's representation made in the Agreement that the Licensed Trademarks were registered, and Washburn would not have entered the Agreement but for such representation.

117.    Washburn has suffered damages in an amount to be proven at trial due to this deliberately false representation including, but not limited to, paying Royalties on a license for intellectual property to which Plaintiffs did not have enforceable rights.

COUNT XI        (Breach of Contract)

118.    Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69, 71-75, 77-81, 83-87, 89-91, 93-99, 101-104, 106-111 & 113-117 of this Counterclaim, as and for Paragraph 118 of this Count XI, as though fully set forth herein.

119.    The Agreement expressly established that all right, title and interest to the Dime Model as a whole, and the intellectual property contained therein, belonged to Washburn.

120.    Plaintiffs, after not contesting Washburn's unlicensed usage of the Washburn Trademarks for over five (5) years, have recently claimed that trademark rights to the Washburn Trademarks belong solely to Plaintiffs.

121.    Plaintiffs have breached the Agreement by claiming such trademark rights in direct contradiction to the provisions contained therein.

122.    Plaintiff Concordia's alleged predecessor-in-interest represented in the Agreement that Trademark Nos. 1,513,524 and 1,513,525 were federally registered trademarks.

123.     Upon information and belief, Plaintiff Concordia was assigned all of Skytronics' obligations under the Agreement.

124.     During the Agreement, Washburn had paid Concordia Royalties under the Agreement for such purportedly registered trademarks.

125.     Plaintiff Concordia failed to notify Washburn that such representation was false and that the Licensed Marks were not registered for the majority of the Agreement.

126.     Washburn has suffered damages due to this course of conduct which constitute two (2) separate and distinct breaches of the Agreement, in an amount to be proven at trial.

COUNT XII        (Cancellation of Plaintiff Concordia's Trademark Applications)

127.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69, 71-75, 77-81, 83-87, 89-91, 93-99, 101-104, 106-111, 113-117 & 119-126 of this Counterclaim, as and for Paragraph 127 of this Count XII, as though fully set forth herein.

128.     In Plaintiff's Applications, Plaintiff attested that it believes that it is entitled to use such mark in commerce and to the best of its knowledge and belief no other person, firm, corporation, or association has the right to use the marks in commerce, either in identical form or in such near resemblance thereto as to be likely to cause consumer confusion.

129.     The statements made by Plaintiff in its three (3) trademark applications are false because Concordia was fully aware of the rights granted to Washburn under the Agreement.  Furthermore, Plaintiff was aware of Washburn's open, notorious, and substantial

31

continuous usage of Washburn's Trademarks from August 1994 to the filing date of Plaintiff's Applications.

130.     These statements are material to the registrability of the marks subject to Plaintiff's Applications.  Notwithstanding the preceding, Plaintiff did not disclose the rights granted under the Agreement to the PTO nor did it disclose Defendant's earlier continuous usage of such mark in commerce.

131.     Washburn will be damaged by the registration of the marks subject to Plaintiff's Applications, in an amount to be proven at trial.

COUNT XIII     (Unjust Enrichment)

132.     Washburn realleges and incorporates by reference the allegations of Paragraph Nos. 1-55, 57-62, 64-69, 71-75, 77-81, 83-87, 89-91, 93-99, 101-104, 106-111, 113-117, 119-126 & 128-131 of this Counterclaim, as and for Paragraph 132 of this Count XIII, as though fully set forth herein.

133.     Pursuant to the Agreement, Washburn paid Royalties to Plaintiff Concordia for a license to use the purportedly registered marks "DEAN" and "DEAN & Logo".  Concordia knowingly benefited therefrom by accepting such Royalty payments and retaining such funds for itself.

134.     However, Defendant had never incorporated the Licensed Marks on the Dime Model guitar and instead used its own unique and distinctive marks "DIME" and "DIME & Logo" on the guitars.

135.     Accordingly, Defendant had not used the Licensed Marks and no Royalties were due thereon.

32

136.     Moreover, the purported registered marks "DEAN" and "DEAN & Logo" had actually been cancelled by the PTO on May 29, 1995 and Plaintiff did not have any enforceable federal rights for the majority of the Agreement.

137.     Consequently, Plaintiff was unjustly enriched by an amount equal to the Royalties paid by Washburn pursuant to the Agreement.

WHEREFORE, Defendant Washburn requests:

1.     That this Court enter a preliminary and permanent injunction enjoining and restraining Plaintiffs, its affiliates, associates, officers, agents, servants, employees and directors and all of Plaintiffs' respective representatives, successors, assigns and attorneys and those persons in privity, active concert or participation with them from:

(a)     using Washburn's Trademarks or any confusingly similar mark in connection with the advertising, promotion or sale of their products;

(b)     holding out in any manner that Plaintiffs or Plaintiffs' products are in sponsored by, or associated or affiliated, with Washburn;

(c)     committing any act that infringes or dilutes Washburn's Trademarks, or that constitutes a violation of 15 U.S.C. §1125(a) or a violation of Florida Statutes §495.151 and §501.204(1);

(d)     unfairly competing with Washburn; and

(e)     otherwise engaging in deceptive and unfair trade practices.

2.      That, pursuant to 15 U.S.C. §1118, Plaintiffs be directed to deliver up for destruction all invoices, forms, advertisements, promotional materials, signs or other materials bearing marks that infringe Washburn's Trademarks.

3.      That this Court enters a judgment directing the PTO to cancel or reject Plaintiffs' Applications.

4.      An accounting to this Court for the profits so realized from Plaintiffs' marketing, promotion, offering for sale and sold merchandise containing the Washburn Trademarks without the authority and consent of Washburn, and a judgment requiring Plaintiffs' to pay all profits to Defendant that Plaintiffs made in violation of Washburn's rights in and to its proprietary Washburn Trademarks.

5.      The damages sustained by Washburn as a result of the conduct alleged herein should be trebled in accordance with the provisions of 15 U.S.C. §1117(b).

6.      That Washburn be awarded the costs of this civil action together with reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

7.      That Washburn be reimbursed an amount equal to the Royalties paid pursuant to the Agreement, plus interest.

8.      That this Court grants Washburn such further relief as the Court deems just and equitable under the circumstances.

**DEFENDANT WASHBURN INTERNATIONAL, INC.**

**RESPECTFULLY DEMANDS AND REQUESTS A TRIAL BY JURY**


By: _____
       **Bienstock & Michael, P.C.**
       **Ronald S. Bienstock, Esq., Trial Counsel**
       250 West 57th Street, Suite 1917
       New York, NY 10107
       Telephone: (212) 399-0099
       Facsimile: (212) 399-1278

       Attorney for the Defendant

Address of Local Counsel:
Mary Ann Diez Floyd, Esq.
737 South Indiana Ave.
Englewood, Fla. 34223
(p) 941-474-5506
(f) 941-474-5507

35

## **CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing has been furnished by facsimile and U.S. Mail to Plaintiffs' attorney Andrew C. Greenberg, Esq., Carlton Fields, P.A., P.O. Box 3239, Tampa, Florida 33601-3239, and by facsimile at 813-229-4133, this 17th day of January 2003.

Elliot Lipins

36